**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

In re:

Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic,
The Medical Group, LLC,
North Dakota Dialysis, LLC,
Aurora Dialysis, LLC,
Kidney Institute of North Dakota, LLC,
KDJ Investment Group, LLC, and
KDJ Properties, LLC,

Debtors.[1]

**Joint Administration Pending**

Case No.: 26-30886
Case No.: 26-30888
Case No.: 26-30889
Case No.: 26-30890
Case No.: 26-30891
Case No.: 26-30892
Case No.: 26-30893

Chapter 11 Cases

**MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS**

1. The Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), Aurora Dialysis, LLC ("Aurora Dialysis"), Kidney Institute of North Dakota, LLC ("Kidney Institute"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties," and, together with Grand Forks Clinic, Medical Group, ND Dialysis, Aurora Dialysis, Kidney Institute, and KDJ Investment, the "Debtors") hereby file this Motion for Order Authorizing the Use of Cash Collateral on an Interim and Final Basis (the

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' addresses and Employer Identification Numbers (EINs) are as follows: Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic (EIN #0821); The Medical Group, LLC (EIN #3765); North Dakota Dialysis, LLC (EIN #3768); Kidney Institute of North Dakota, LLC (EIN #6471); and KDJ Investment Group, LLC (EIN #2199), each located at 5750 S Washington Street, Grand Forks, ND 58201. Aurora Dialysis, LLC (EIN #8084) is located at 1451 44th Avenue South, Suite 104D, Grand Forks, ND 58201. KDJ Properties, LLC (EIN #1920) is located at 645 Beacon Circle, Grand Forks, ND 58201.

"Motion"). This Motion should be granted because the Debtors require use of cash collateral to ensure their continued operations during the pendency of these cases.

2. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these Chapter 11 cases were filed on October 16, 2026 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. §§ 105(a), 363, and 364 and Fed. R. Bankr. P. 4001(b). This Motion is filed under Fed. R. Bankr. P. 9013 and 9014 and Local Rules 9013-1 and 9014-1. Notice of the hearing on this Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

5. The Debtors have filed a contemporaneous motion requesting expedited relief pursuant to Fed. R. Bankr. P. 9006(c) and Local Rule 9006-1.

## FED. R. BANKR. P. 4001(b)(1)(B) STATEMENT

6. Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B), the Debtors seek to use cash in which FWBT and the MCAs, all as defined below (collectively, the "Prepetition Lenders"), may assert a security interest. The Debtors will use the cash collateral to continue their operations while pursuing a reorganization of their business. The Debtors request interim authorization to use cash collateral through the week beginning on November 9, 2026, and final authorization to use cash collateral through the week beginning on January 11, 2027. As adequate protection, the Debtors

propose to grant the Prepetition Lenders replacement liens in their respective collateral to the extent of cash collateral used, maintain all insurance, and operate so as to preserve the value of the property of the estates.

**BACKGROUND**

7. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed.

8. The Debtors collectively offer a wide range of healthcare services under one roof, including primary care, pediatrics, internal medicine, gynecology, and geriatric care.

9. Further background information about the Debtors and facts related to other first-day motions is set forth in the Declaration of Dr. Khaled Rabadi in Support of Chapter 11 Petition and First Day Motions.

**I. THE PREPETITION LENDERS.**

**A. First Western Bank & Trust.**

10. First Western Bank & Trust ("FWBT") loaned approximately $7,280,784.17 collectively to Grand Forks Clinic, KDJ Investment, and KDJ Properties under various loan documents (collectively, the "FWBT Loan Documents").

11. Pursuant to the FWBT Loan Documents, FWBT asserts a security interest in the following property owned by Grand Forks Clinic:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but

> not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

12. Pursuant to the FWBT Loan Documents, FWBT recorded a mortgage in certain real property located in Grand Forks County, North Dakota, with the address of 5750 South Washington Street, Grand Forks, ND 58201 (the "Office Building") owned by KDJ Investment.

13. Pursuant to the FWBT Loan Documents, FWBT recorded a mortgage in certain real property located in Grand Forks County, North Dakota, with the address of 645 Beacon Circle, Grand Forks, ND 58201 (the "Residence") owned by KDJ Properties.

14. Pursuant to the FWBT Loan Documents, FWBT further asserts a purchase money security interest in a MAGNETOM ALTEA – MRI, MULTIX IMPACT – XRAY, MAMMOMAT REVELATION – MAMMOGRAPHY, and SOMATOM GO.ALL – CT SCAN and all accessories related to the equipment owned by Grand Forks Clinic.

15. Pursuant to the FWBT Loan Documents, FWBT further asserts a purchase money security interest in a DIM EXL 200 Domestic and ABACUS 5 ANALYZER owned by Grand Forks Clinic.

16. As of the Petition Date, the Debtors estimate that the outstanding amount of the Debtors' obligations to FWBT totaled approximately $7,242,289.

**B. Merchant Cash Advance Lenders.**

17. The Debtors received loans from certain Merchant Cash Advance Lenders, Credibly and PIRS Capital (collectively, the "MCAs"). However, based on the public lien records, it does not appear that any of the MCAs hold a perfected security interest. Nevertheless, the Debtors shall serve a copy of this Motion on the MCAs.

**II. THE EQUIPMENT LENDERS.**

18. North Mill Credit Trust ("North Mill") asserts a security interest in a SoftWaveGold 500 Li, Softwave System with 2 Applicators OP155 and other equipment owned by Grand Forks Clinic and covered by Agreement Number T-007615 C906622 dated December 30, 2024.

19. GE HFS, LLC ("GE") asserts a security interest in one GE Healthcare Prodigy Pro Full and all accessories and insurance related to the equipment owned by Grand Forks Clinic.

20. Lake Agassiz Certified Development Company/SBA (collectively, "Lake Agassiz") asserts a security interest in all fixtures, furnishings, building materials, supplies, equipment, and general intangibles owned by Grand Forks Clinic, including the following equipment:

a. Xray (Multix Impact YMAT);

b. MAMMO (Mammomat Revelation);

c. MRI (Magnetom Altea-System);

d. CT (Somatom go.All YMAT);

e. Electro Watchman Security System;

f. McKesson Leep System;

g. McKesson Colposcope; and

h. McKesson Optistar Injector.

21. MMP Capital, LLC, ISAOA ("MMP Capital") asserts a security interest in equipment by BTL Industries for aesthetics (EXION) and women's health (EMSELLA) and an ultrasound machine for the Fargo location.

22. De Lage Landen Financial Services, Inc. ("De Lage") asserts a security interest in a hematology analyzer.

23. While North Mill, GE, Lake Agassiz, MMP Capital, and De Lage (collectively, the "Equipment Lenders") all assert security interests in various assets of the Debtors, the Debtors do not believe any of the Equipment Lenders hold a security interest, or otherwise assert a security interest, in the Debtors' cash collateral, including in any cash, accounts, or accounts receivable.

24. Nevertheless, out of an abundance of caution, the Debtors served the Equipment Lenders with a copy of this Motion.

## RELIEF REQUESTED

### I. CASH NEEDS.

25. The Debtors seek authorization to use cash collateral to continue operations and pay expenses in accordance with the cash flow projections and budget attached as **Exhibit A** (the "Budget").

26. The Debtors have an immediate need to use approximately $639,000 between the Petition Date and the end of the week beginning November 9, 2026, in accordance with the Budget.

27. The Debtors have reviewed the Budget and delayed all payments that are not critical during the interim period. Payment of the remaining amounts is necessary to avoid immediate and irreparable harm.

28. The Debtors will use the cash collateral to pay essential expenses of their business operations, which include pre- and postpetition wages and benefits to employees, payroll taxes, insurance, critical vendor payments, and postpetition payments to utility providers, trade vendors, and other parties that supply essential goods and services to the Debtors.

29. If the Debtors cannot use cash collateral, they will not be able to fund their operations, which will result in loss of value for the estates and their creditors.

30. The Debtors will generate cash from continuing operations. As set forth in the Budget, the Debtors project that such cash will be sufficient to fund their Chapter 11 administrative expenses, including postpetition operating expenses, while maintaining a level of collateral to provide adequate protection to the Prepetition Lenders.

31. The Debtors require the use of $1,320,000 from the week beginning November 16, 2026, through the end of the week beginning January 11, 2027.

**II. ADEQUATE PROTECTION.**

32. To adequately protect the Prepetition Lenders' interests, the Debtors propose to grant the Prepetition Lenders postpetition replacement security interests of the same priority, dignity, and effect as their prepetition interests in the Debtors' cash collateral, to the extent of cash collateral used. As described in the collateral balance projections included with the Budget, the Debtors project that the value of the cash, accounts receivable, and other collateral of the Prepetition Lenders will remain above the combined balance as of the Petition Date.

33. As additional adequate protection, the Debtors will continue to provide the reporting and inspection rights the Prepetition Lenders are entitled to under their respective prepetition agreements with the Debtors.

34. Prior to the hearing on the Motion, and in settlement of any and all of the matters raised in this Motion, the Debtors may enter into a stipulation or agreed order with the Prepetition Lenders concerning use of cash collateral, adequate protection, and other related matters. In the event the Debtors enter into any such stipulation, the Debtors will seek approval of the stipulation without further notice or hearing pursuant to Fed. R. Bankr. P. 4001(d)(4), and **THE DEBTORS HEREBY GIVE NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION OR AGREED ORDER.**

## BASIS FOR RELIEF REQUESTED

### I. THE COURT SHOULD AUTHORIZE THE USE OF CASH COLLATERAL.

35. The Bankruptcy Code provides that a debtor in possession may use cash collateral only with the secured creditor's consent or if the court, after notice and a hearing, authorizes such use. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor. The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the Debtor's request for use of cash collateral, and (3) determine whether the Debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).

36. Pursuant to *Martin*, the first step is to establish the value of the secured creditor's interest. Focusing on the cash collateral that is subject to the liens of the lender, the creditor's interest is determined by what the creditor could recover if the collateral were disposed of in the most commercially reasonable manner practicable. *In re Boring*, 91 B.R. 791, 795 (Bankr. S.D. Ohio 1988); *United States v. Smithfield Estates, Inc.*, 48 B.R. 910, 912 (Bankr. D.R.I. 1985).

37. As of the Petition Date, the Debtors' obligations to the Prepetition Lenders and the Equipment Lenders collectively totaled approximately $11,533,285 plus additional costs, fees, and interest. As of that same date, the value of the Prepetition Lenders' collateral was approximately $5,797,754.

38. The second requirement of *Martin* requires the Court to identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral. In the instant case, such risk would be that a debtor might fail to generate sufficient replacement cash collateral to compensate for use of existing cash collateral. Here, that risk is minimal. The Debtors project that the value of the collateral will actually increase during the pendency of the cases. The Debtors propose to use cash collateral to maintain their existing operations, to meet payroll and payroll taxes, and to meet other operating expenses, all of which maintain the going-concern value of the Debtors and inure to the benefit of the Prepetition Lenders. In the event that the Debtors are not authorized to use cash collateral, the Debtors' business will be severely harmed. Employees, who are critical to the Debtors' operations, will leave. Such a result would greatly impair the value of the Debtors' assets in which the Prepetition Lenders claim security interests. Such a result would ensure that unsecured creditors receive, at best, a minimal distribution on account of their claims and would be disruptive to the Debtors' customers, employees, and other parties in interest.

39. The third requirement of *Martin* requires the Court to examine the debtor's adequate protection proposal to determine that the proposal protects the value of the lender's interest, if any, in the cash collateral relative to the risk to such value. *See Martin*, 761 F.2d at 477. Here, to adequately protect the Prepetition Lenders' interests, the Debtors propose to grant the Prepetition Lenders postpetition replacement security interests of the same priority, dignity,

and effect as their prepetition interests in the Debtors' cash collateral, to the extent of cash collateral used.

40. As described in the collateral balance projections attached to the Budget, the Debtors project that the value of the collateral will grow during the period in which the Debtors seek to use cash collateral. Accordingly, the Prepetition Lenders are adequately protected by the increase of collateral during the period.

41. As additional adequate protection, the Debtors will continue to provide the reporting and inspection rights the Prepetition Lenders are entitled to under their applicable agreements with the Debtors and copies of all reporting provided to the United States Trustee.

## II. IMMEDIATE RELIEF IS WARRANTED UNDER FED. R. BANKR. P. 4001 AND 6003.

42. Federal Rule of Bankruptcy Procedure 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than 14 days after the service of such motion. If the motion so requests, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

43. Federal Rule of Bankruptcy Procedure 6003 similarly empowers a court to grant relief within the first twenty-one (21) days after the petition date "to the extent that relief is necessary to avoid immediate or irreparable harm." Fed. R. Bankr. P. 6003.

44. For the reasons discussed above, entry of the proposed Interim Order authorizing the Debtors to immediately use cash collateral up to the amounts set forth in the Budget and granting the other relief requested herein is necessary to avoid a severe disruption in the Debtors' operations at this critical juncture and maximize the value of the Debtors' estates for the benefit of

all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Fed. R. Bankr. P. 4001 and 6003 to support granting the relief requested herein.

## III. WAIVER OF THE STAY UNDER FED. R. BANKR. P. 6004(h) IS WARRANTED.

45. Additionally, pursuant to Fed. R. Bankr. P. 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

46. As described above, the immediate use of cash collateral up to the amounts set forth in the Budget is essential to support continuing business operations and prevent irreparable damage to the Debtors' estates. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h), to the extent such stay applies.

47. The Debtors respectfully request a waiver of any stay of the effectiveness of the order approving this Motion under Fed. R. Bankr. P. 6004(h).

## CONCLUSION

48. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

49. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Dr. Khaled Rabadi attached hereto.

50. This Motion is accompanied by a proposed order and proof of service.

51. Pursuant to Local Rule 9014-1(B), the Debtors hereby give notice that they may, if necessary, call Dr. Khaled Rabadi, the owner of the Debtors, whose business address is 5750 S Washington Street, Grand Forks, ND 58201, to testify regarding the facts set forth in the Motion.

52. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

A. Authorizing interim use of cash collateral from the Petition Date through the week beginning November 9, 2026, in the total approximate amount of $639,000;

B. Authorizing final use of cash collateral from the week beginning November 16, 2026, through the week beginning January 11, 2027, in the total approximate amount of $1,320,000; and

C. Granting such other relief as the Court deems just and equitable.

Dated: October 19, 2026

*/e/ Steven R. Kinsella*

Steven R. Kinsella (#09514)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
skinsella@fredlaw.com

Austin A. Eggl (#09672)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
(701) 237-8200
aeggl@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS**

**AFFIDAVIT**

I, Dr. Khaled Rabadi, am the owner of Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, The Medical Group, LLC, North Dakota Dialysis, LLC, Aurora Dialysis, LLC, Kidney Institute of North Dakota, LLC, KDJ Investment Group, LLC, and KDJ Properties, LLC, and I declare under penalty of perjury that the facts set forth in the preceding Motion for Order Authorizing the Use of Cash Collateral on an Interim and Final Basis are true and correct, according to the best of my knowledge, information, and belief.

Dated: October 19, 2026

Signed: DocuSigned by: Khaled Rabadi
56D59FC25E1A448...
Dr. Khaled Rabadi

EXHIBIT A

**Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, et al.**
**Collateral Value Projections**
**Dated: 10/19/2026**

| Description | Filing Date | End of Interim Period | End of Final Period |
|---|---|---|---|
| **Cash** | $ 20,000.00 | $ 81,000.00 | $ 157,000.00 |
| **Clinic Building** | $ 4,300,000.00 | $ 4,300,000.00 | $ 4,300,000.00 |
| **KDJ Properties Building** | $ 670,000.00 | $ 670,000.00 | $ 670,000.00 |
| **Equipment** | $ 522,754.00 | $ 522,754.00 | $ 522,754.00 |
| **Accounts Receivable** | $ 255,000.00 | $ 255,000.00 | $ 255,000.00 |
| **Other Assets** | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 |
| **TOTAL** | **$ 5,817,754.00** | **$ 5,878,754.00** | **$ 5,954,754.00** |

**Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, et al.**
**Cash Flow Projections**
**Dated: 10/19/2026**

| | Interim Period | | | | Final Period | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Beginning** | **19-Oct-26** | **26-Oct-26** | **2-Nov-26** | **9-Nov-26** | **16-Nov-26** | **23-Nov-26** | **30-Nov-26** | **7-Dec-26** | **14-Dec-26** | **21-Dec-26** | **28-Dec-26** | **4-Jan-27** | **11-Jan-27** | **Total** |
| **Starting Cash** | **$ 20,000.00** | **$ 133,000.00** | **$ 80,000.00** | **$ 86,000.00** | **$ 81,000.00** | **$ 193,000.00** | **$ 143,000.00** | **$ 127,000.00** | **$ 77,000.00** | **$ 191,000.00** | **$ 108,000.00** | **$ 175,000.00** | **$ 79,000.00** | |
| **Cash In** | | | | | | | | | | | | | | |
| GFC Deposits | $ 130,000.00 | $ 130,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 1,580,000.00 |
| AD Deposits | $ 49,000.00 | $ 16,000.00 | $ 23,000.00 | $ 23,000.00 | $ 49,000.00 | $ 23,000.00 | $ - | $ 23,000.00 | $ 49,000.00 | $ 23,000.00 | $ 23,000.00 | $ 23,000.00 | $ 23,000.00 | $ 347,000.00 |
| KIND Deposits | $ 16,000.00 | $ 7,000.00 | $ 8,000.00 | $ 8,000.00 | $ 16,000.00 | $ 8,000.00 | $ - | $ 8,000.00 | $ 16,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 119,000.00 |
| Holiday Bash (11/12) | | | | $ 50,000.00 | | | | | | | | | | $ 50,000.00 |
| **Total Cash In** | **$ 195,000.00** | **$ 153,000.00** | **$ 151,000.00** | **$ 201,000.00** | **$ 185,000.00** | **$ 151,000.00** | **$ 120,000.00** | **$ 151,000.00** | **$ 185,000.00** | **$ 151,000.00** | **$ 151,000.00** | **$ 151,000.00** | **$ 151,000.00** | **$ 2,096,000.00** |
| | | | | | | | | | | | | | | |
| **Cash Out** | | | | | | | | | | | | | | |
| GFC Payroll | $ - | $ 119,000.00 | $ 3,000.00 | $ 119,000.00 | $ - | $ 119,000.00 | $ 3,000.00 | $ 119,000.00 | $ - | $ 119,000.00 | $ - | $ 119,000.00 | $ - | $ 720,000.00 |
| AD Payroll | $ - | $ 19,000.00 | $ - | $ 19,000.00 | $ - | $ 19,000.00 | $ - | $ 19,000.00 | $ - | $ 19,000.00 | $ - | $ 19,000.00 | $ - | $ 114,000.00 |
| Travelers | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 3,000.00 | $ 3,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ - | $ 1,000.00 | $ 1,000.00 | $ 44,000.00 |
| GFC BCBS ND | $ - | $ - | $ 45,000.00 | $ - | $ - | $ - | $ 45,000.00 | $ - | $ - | $ - | $ - | $ 45,000.00 | $ - | $ 135,000.00 |
| AD BCBS ND | $ - | $ - | $ 3,000.00 | $ - | $ - | $ - | $ 3,000.00 | $ - | $ - | $ - | $ - | $ 3,000.00 | $ - | $ 9,000.00 |
| GFC/TMG Expenses | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 46,000.00 | $ 598,000.00 |
| AD Expenses | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 65,000.00 |
| AD Supplies | $ 11,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 119,000.00 |
| KIND Expenses | $ 2,000.00 | $ - | $ 2,000.00 | $ - | $ - | $ - | $ - | $ 2,000.00 | $ - | $ - | $ - | $ - | $ 2,000.00 | $ 8,000.00 |
| KIND Supplies | $ 10,000.00 | $ - | $ - | $ - | $ 10,000.00 | $ - | $ - | $ - | $ 10,000.00 | $ - | $ - | $ - | $ 10,000.00 | $ 40,000.00 |
| GFC Fargo Rent | $ - | $ - | $ 6,000.00 | $ - | $ - | $ - | $ 6,000.00 | $ - | $ - | $ - | $ 6,000.00 | $ - | $ - | $ 18,000.00 |
| AD Rent | $ - | $ - | $ 15,000.00 | $ - | $ - | $ - | $ 15,000.00 | $ - | $ - | $ - | $ 15,000.00 | $ - | $ - | $ 45,000.00 |
| KIND Rent | $ - | $ - | $ 3,000.00 | $ - | $ - | $ - | $ 3,000.00 | $ - | $ - | $ - | $ 3,000.00 | $ - | $ - | $ 9,000.00 |
| Legal Expenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 35,000.00 | $ - | $ - | $ - | $ 35,000.00 |
| | | | | | | | | | | | | | | $ - |
| **Total Cash Out** | **$ 82,000.00** | **$ 206,000.00** | **$ 145,000.00** | **$ 206,000.00** | **$ 73,000.00** | **$ 201,000.00** | **$ 136,000.00** | **$ 201,000.00** | **$ 71,000.00** | **$ 234,000.00** | **$ 84,000.00** | **$ 247,000.00** | **$ 73,000.00** | **$ 1,959,000.00** |
| | | | | | | | | | | | | | | |
| **Net Cash In (Out)** | **$ 113,000.00** | **$ (53,000.00)** | **$ 6,000.00** | **$ (5,000.00)** | **$ 112,000.00** | **$ (50,000.00)** | **$ (16,000.00)** | **$ (50,000.00)** | **$ 114,000.00** | **$ (83,000.00)** | **$ 67,000.00** | **$ (96,000.00)** | **$ 78,000.00** | **$ 137,000.00** |
| | | | | | | | | | | | | | | |
| **Cash at the end of the week** | **$ 133,000.00** | **$ 80,000.00** | **$ 86,000.00** | **$ 81,000.00** | **$ 193,000.00** | **$ 143,000.00** | **$ 127,000.00** | **$ 77,000.00** | **$ 191,000.00** | **$ 108,000.00** | **$ 175,000.00** | **$ 79,000.00** | **$ 157,000.00** | |